**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ISAAC JOHNSON, III,

    Plaintiff,

-v-                                                Case No. 8:06-CV-960-T-30TBM

LT. OTTO, et al.,

    Defendants.

_____/

## ORDER

Plaintiff, an inmate at the Falkenburg Road Jail ("FRJ"), Hillsborough County, Florida, when he initiated this cause of action, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (Dkt. 1). Plaintiff names Lt. Otto, Sgt. K. Cole, and Deputies Reid, Buka, Hoover, Tanon, Walker, and Comerford as Defendants. Because Plaintiff is seeking redress from employees of a government entity, the Court has undertaken the mandatory screening of Plaintiff's complaint required by 28 U.S.C. § 1915A. The Court finds, for reasons set forth *infra*, that the complaint should be dismissed prior to service on the Defendants pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### Discussion

Plaintiff asserts that the Defendants engaged in conduct violative of his Eighth Amendment right to be free of cruel and unusual punishment and Article 17 of the Florida Constitution, as well as certain "ethical, professional, and standard operation procedures

. . . intentionally/negligently violated" Dkt. 1 at 8. He does not state whether he was a pretrial detainee or a prisoner at the FRJ. The Eighth Amendment does not apply to pretrial detainees and the Fourth Amendment does not apply to persons already in custody and under confinement. Whether Plaintiff was a pretrial detainee or a prisoner does not, however, affect the analysis of his claim because the Due Process Clause of the Fourteenth Amendment protects a pretrial detainee, and the protection corresponds with that provided to prisoners by the Eighth Amendment, applicable to the States through the Due Process Clause of the Fourteenth Amendment. *See, e.g., Taylor v. Adams*, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000)*; Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

According to Plaintiff, the events about which he complains were the result of allegations he made to FRJ personnel that his legal and personal mail were being mishandled by FRJ mailroom personnel. Plaintiff contends that when he filed a grievance regarding the problems he was having with "misplaced, mishandled, re-routed and or lost" mail, he became subject to "vindictive harassment and retaliatory treatment for exercising the grievance process (i.e., cursory denials, refusal of grievance forms, evasion tactics, lying, cover-up, [and] labeling as argumentative or problematic)" (Dkt. 1 at 8). In his complaint, Plaintiff seeks the following relief:

> (1) implementation of accountability method for receiving/delivery of I/M mail at this facility; (2) injunction order against named defendants that they would not be allowed within 500 ft. of me or my visitors; (3) $100,000.00 punitive damages for mental anguish and the traumatic stress to myself and my family/fiancé (Plaintiff has been diagnosed as suffering post traumatic stress); [and] (4) [the] complaint be added to each defendant's personnel file and be made public record.

Dkt. 1 at 10.

**Exhaustion**

Because Plaintiff alleges that the Defendants engaged in conduct which violated § 1983, the initial inquiry must focus on the language of 42 U.S.C. § 1997e, which sets forth certain threshold requirements that must be satisfied before a prisoner can bring a § 1983 claim. On April 26, 1996, the President signed into law the Prison Litigation Reform Act, which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e, to read, *inter alia*, as follows:

> (a) Applicability of Administrative Remedies. No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a); Prison Litigation Reform Act of 1995, Title VIII, Section 803(d), Suits by Prisoners (hereinafter "PLRA"). This provision applies in the present case because Plaintiff filed his complaint after the PLRA's effective date. *See Booth v. C.O. Churner*, 532 U.S. 731, 736 (2001)*; Harper v. Jenkin,* 179 F.3d 1311, 1312 (11th Cir. 1999); *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998).

Pursuant to § 1997e(a), this Court has an independent duty to review the complaint to ensure Plaintiff has fully exhausted all of his claims*. See Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.) (finding that district courts should *sua sponte* enforce the exhaustion requirement imposed by the PLRA with regard to actions by prisoners challenging prison conditions), *cert. denied*, 525 U.S. 833 (1998).

"[T]here is no longer discretion to waive the exhaustion requirement." *Alexander*, 159 F.3d at 1325 (11th Cir. 1998). *See also Booth*, 532 U.S. at 741 (finding that Congress

has mandated exhaustion of administrative remedies, regardless of the relief offered through the administrative procedures).  Section 1997e(a) does not say that exhaustion of administrative remedies is required before a case may be <u>decided</u>. It says that "[n]o action shall be <u>brought</u> with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2005) (emphasis added). The Supreme Court held in *Booth* that exhaustion, <u>including</u> <u>appeal</u> of an unfavorable decision on the inmate's initial grievance, is required even where the State's administrative process could not award him the monetary relief he sought.  *See Booth*, 532 U.S. at 736.

The Hillsborough County Jail System has a grievance procedure available to inmates for use in resolving problems they encounter with jail conditions.[1] Plaintiff must exhaust the administrative remedies available to him through the grievance process where the incidents about which he complains occurred.

A prisoner who fails to complete the administrative process or falls short of compliance with procedural rules governing grievances procedurally defaults his claims. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, --- U.S. ----, 126 S.Ct. 2978 (2006). Consequently, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. *Moore v. Smith,* 18 F.Supp.2d 1360, 1362 (N.D.Ga.1998).

---

[1]The Court takes judicial notice, *see* Fed. R. Evid. 201, of information regarding the inmate grievance process in place to assist inmates incarcerated in the jails of Hillsborough County, available in the *Inmate Handbook, Dep't. of Detention Services, Hillsborough Co. Sheriff's Office*, revised July 2005. Inmate Request Forms "are required to apply for most services, to request admission in programs/activities, and to appeal disciplinary actions. *Id.* at 24. The act of asking questions or seeking information, guidance, or assistance is not considered to be a grievance. "Inmates are afforded the opportunity to register complaints about the conditions of their confinement, policy, or incidents" by filing a Grievance Form "available upon request from the pod deputy." *Id.* at 6. An inmate's appeal of an adverse decision must be submitted within 15 days of receipt of the administrative response to his grievance. *See* Dkt. 1, Attach., Grievance No. 2005FRJ2391.

With his complaint, Plaintiff filed copies of four Inmate Grievances[2] and six Inmate Requests.[3] *See* Fed. R. Civ. P. 10(c) ("a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Having reviewed these documents in light of the claims presented in the complaint, the Court finds that the only grievance Plaintiff properly exhausted deals with an incident that occurred at the FRJ during visitation hours on December 15, 2005. Specifically, Plaintiff complained that:

> On 12-15-05 at approx. 6:55 p.m.[,] I pressed the PA button and said to Deputy Reid that I had a 7 p.m. visit. Dep. Reid said he'd let me out at 7 p.m. At 7:05 p.m. I pushed the button again and inquired about being let out. Dep. Reid then threatened to cancel my visit[,] stating that I was acting as if he were a child (?) [sic] Dep. Reid finally released me at 7:10 p.m. and further threats [sic] to cancel my visit. Dep. Reid then entered erroneous information [sic] for my Sat. (12/17) visit resulting in further complications. On the previous evening I'd been held in my room for approx. (20) minutes because visitors were not allowed in until 7:15 p.m. by personnel doing visitation up front. My family called and were told that I should follow the grievance procedure and that there would be no vindictive acts of retaliation done against me. I complied and wrote a grievance, which I handed to Dep. Reid. The grievance was not processed, nor did I receive a copy[,] and it was after this that Dep. Reid entered the wrong information [sic] for my next visit.

Dkt. 1, Attach., Inmate Grievance 2005FRJ2391 (emphasis in original). In response to Plaintiff's grievance, Defendant Cole stated:

> Your visitor had not yet arrived and the deputy had yet to account for you at headcount. Dep. Reid accounted for you and let you out when your visitor arrived. Visitors are let in the visitation area at 1900 hours if they are processed. Your visitor may have to arrive earlier to get processed before 1900. Deputy Reid did not threaten you[;] he explained the consequences of your unruly behavior. Deputy Reid didn't enter wrong information on your visitors [sic] information. The information was already documented in the computer by the deputy who added your visit list iniatially [sic].

---

[2] *See* Dkt. 1, Attachs., Inmate Grievance Nos. 2005FBJF0277, dtd. Feb. 8, 2005; 2005FRJ1205, dtd. Jun. 12, 2005; 2005FRJ2391, dtd. Dec. 18, 2005; and 2006F0330, dtd. Mar. 3, 2006.

[3] *See* Dkt. 1, Attachs., Inmate Request Nos. 490932, dtd. Jun. 15, 2005; 490935, dtd. Jun. 15, 2005; 692594, dtd. Aug. 4, 2005; 796932, dtd. Dec. 29, 2005; 811560, dtd. Jan. 24, 2006; and 812451, dtd. Feb. 20, 2006.

Dkt. 1, Attach., Inmate Grievance Report 2005FRJ2391. Plaintiff informed jail personnel that he would like to appeal the grievance. He filed his appeal on December 29, 2005:

> This is an appeal of the disposition narrative in Grievance #05FRJ2391, by supervisor: 02947 K. Cole.
>
> 1. In the narrative K. Cole asserts that: my visitor had not arrived at 1900 hrs [sic] -- this is false. My visitor arrives here between 6:20 and 6:45 each visit. This can be verified by staff doing the visits up front who know my visitor due to the regularity of our visits. My visitor was sitting on the monitor 15 minutes! (7-715 p.m.) [sic] before I was let out by Dep. Reid.
>
> 2. K. Cole asserts that Dep. Reid didn't enter the wrong information [sic] for my 12/17/05 visit. K. Cole is incorrect. A review of the sign-up log will show what I put down which is <u>not</u> what Dep. Reid entered in for my visit, resulting in complications for my visitor. Had it not been for the staff up front knowing my visitor and the regularity of her coming, the staff would not have called to check and see if what they had in the computer matched what I put down -- which it didn't, [sic] because Dep. Reid had put in the wrong information (name) [sic]. Dep. Kelley can attest to this fact, as well as Staff that worked on 12/17/05 at visitation.
>
> 3. I would respectfully appeal K. Cole's disposition as not being based upon a thorough investigation into this matter.
>
> 4. Dep. Reid did in fact threaten to cancel my visit.
>
> 5. I did not act in <u>any way</u>, [sic] unruly w/ Dep. Reid.
>
> 6. My visitor called to complain about sitting at the monitor for 10, 15 or 20 minutes before I'm allowed to see them. She was told <u>I</u> should grieve this matter and that no harassment, or vindictive repercussions would follow. However, on my next visit after her call and this incident w/Dep. Reid, somehow the wrong information [sic] was put in by Dep. Reid. I would say this was vindictive, as well as K. Cole's narrative which essentially says that myself, my visitor, Dep. Kelly, the visitation staff, as well as the sign-up sheet are liars, and that I've made a frivolous claim.

Dkt. 1, Attach., Inmate Request 796932 (emphasis in original). Plaintiff's appeal was reviewed by Captain Bliss, who found that the visitation log confirmed that Plaintiff's visitor signed in at 6:53 p.m. on the evening in question. Captain Bliss further stated, however, that he was unable to confirm other issues raised by Plaintiff "one way or the other." *Id.*

While Plaintiff has satisfied the exhaustion requirement on his claim of retaliation, other statutory provisions governing § 1983 claims foreclose granting him the relief he seeks.

**Monetary Relief**

First, Plaintiff's claims for monetary damages are subject to dismissal. Prisoners retain constitutional protections despite the necessary restrictions on their rights and privileges. *See Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). However, 42 U.S.C. § 1997e provides, in pertinent part, that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. §1997e(e). There is no doubt that Plaintiff was incarcerated at the time he filed his complaint. The Eleventh Circuit has held that the language "'**[n]o** action shall be brought . . . 'means [**no action** shall be ] filed." *See Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (quoting *Harris v. Garner,* 216 F.3d 970, 974 (11th Cir. 2000)).

In *Harris*, the Eleventh Circuit fused the physical injury analysis under § 1997e(e) with the framework set out by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), for analyzing prisoner civil rights claims. *Harris v. Garner*, 190 F.3d 1279 (11th Cir. 1999), *vacated by*, 197 F.3d 1059 (11th Cir. 1999)*, and reinstated in relevant part by*, 216 F.3d 970 (11th Cir. 2000). Thus, in order to satisfy section § 1997e(e), a prisoner seeking monetary damages for mental or emotional injury must demonstrate more than *de minimus* "physical injury." *Harris*, 190 F.3d at 1286-87. *See also Osterback v. Ingram, 2000* WL 297840 (N.D. Fla.), *aff'd* 263 F.3d 169 (11th Cir. 2001) (table decision), *cert. denied,* 536 U.S. 906 (2002).

Plaintiff did not mention any ailment or injury in the inmate requests and grievances he filed, nor does he state that he sought medical treatment for any physical injury. Where, as here, the plaintiff fails to allege any concrete physical injury resulting from the conduct about which he complains and he does not seek nominal damages,[4] the provisions of § 1997e(e) foreclose his claim for emotional and mental suffering, *see Napier v. Preslicka*, 314 F.3d at 531. Plaintiff has not produced one scintilla of medical evidence in support of his claim that he experienced post-traumatic stress or otherwise alleged that he suffered any physical injury as a result of actions allegedly taken by the Defendants. Accordingly, Plaintiff's claim for emotional and mental suffering is foreclosed under § 1997e(e). *See Harris*, 216 F.3d at 974-77 (interpreting the physical injury requirement of § 1997e(e))*; Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (holding that the Eighth Amendment standards control in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering).

**Injunctive and Declaratory Relief**

It is a well-established principle of law that an actual controversy must exist at all stages of federal court proceedings. Whether a case is moot may be raised by a federal court on its own and at any stage of the proceedings. *See North Carolina v. Rice,* 404 U.S. 244, 246 (1971).  "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (quotations omitted).

---

[4] *See Boxer X v. Donald*, 169 Fed. Appx. 555, 558 (11th Cir. 2006) ("[T]he PLRA's limitation on compensatory relief does not necessarily limit other forms of monetary relief. For example, '[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.'").

In the instant case, events have occurred subsequent to the filing of the complaint that render Plaintiff's request for injunctive and declaratory relief meaningless. Since Plaintiff was transferred from the Hillsborough County Jail to the Gulf Correctional Institution, a Florida Department of Corrections facility, *see* Dkt. 6, a favorable decision on his request for an injunction and declaratory relief would not benefit him. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.), *cert. denied,* 488 U.S. 1046 (1989) (finding that "an inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred."); *Wahl v. McIver,* 773 F.2d 1169, 1173 (11th Cir. 1985) (same); *Dudley v. Stewart,* 724 F.2d 1493, 1494-95 (11th Cir. 1984) (same).

Because Plaintiff no longer has a legally cognizable interest in the outcome of the only claim presented in the complaint that is properly exhausted, he fails to state a claim for relief that is cognizable under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(e); *Murphy v. Hunt,* 455 U.S. 478, 482 (1982).

**Conclusion**

For the foregoing reasons, the Court finds that even when liberally construed due to Plaintiff's *pro se* status, the complaint is subject to summary dismissal pursuant to 28 U.S.C. 1915A(b)(1). The Court cannot proceed with a cause of action under § 1983 where the preconditions to suit have not been met.  Plaintiff has not shown any immediate risk of substantial or irreparable harm.  Amendment will not cure the deficiency in the complaint, and given the facts presented in the complaint, discovery would be futile.

ACCORDINGLY, the Court **ORDERS** that:

1. The complaint **(Dkt. 1)** is **DISMISSED** with prejudice.

2.  The **Clerk** shall enter judgment against Plaintiff, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on November 8, 2006.

*[signature]*

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
*Pro se* Plaintiff

SA:jsh